

FILED

Mar 06 2019, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles E. Traylor
Kolb Roellgen & Kirchoff LLP
Vincennes, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ian McLean
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher H. Boultinghouse, *Appellant-Defendant,* | March 6, 2019 |
| | Court of Appeals Case No. 18A-CR-1536 |
| v. | Appeal from the Gibson Circuit Court |
| State of Indiana, *Appellee-Plaintiff.* | The Honorable Jeffrey F. Meade, Judge |
| | Trial Court Cause No. 26C01-1804-F4-345 |

**Najam, Judge.**

## Statement of the Case

[1]     Christopher H. Boultinghouse appeals his conviction for invasion of privacy, as a Class A misdemeanor, following a jury trial. Boultinghouse raises three issues for our review, which we restate as the following two issues:

1. Whether his conviction for invasion of privacy infringes on Boultinghouse's fundamental rights under the United States or Indiana Constitutions.

2. Whether the State presented sufficient evidence to support Boultinghouse's conviction.

[2] We hold that the invasion of privacy statute does not infringe on Boultinghouse's fundamental rights. We also hold that the State presented sufficient evidence to support Boultinghouse's conviction. Accordingly, we affirm.

## Facts and Procedural History

[3] On September 20, 2017, the trial court issued an ex parte order for protection for Roberta Hook and against Boultinghouse. According to the ex parte order, Hook had shown, by a preponderance of the evidence, that Boultinghouse was her intimate partner, namely, her husband (though the dissolution of their marriage would become final about one month later); that he had engaged her in domestic or family violence; that he represented a credible threat to her safety; and that the issuance of the order was necessary to bring about a cessation of that violence or threat of violence. The ex parte order expressly enjoined Boultinghouse from committing or threatening to commit further acts of domestic or family violence, stalking, or a sex offense against Hook; it prohibited him from harassing, annoying, telephoning, contacting, "or directly or indirectly communicating" with Hook; and it ordered Boultinghouse "to stay

away from the residence" of Hook "even if invited . . . by [Hook] or any other person." Ex. Vol. at 10-11.

[4]     A local law enforcement officer, Jennifer Loesch, served the ex parte order on Boultinghouse in person and advised him that, as the order was a temporary order, there would be a "following court date that [he would] need to be [at] and speak to the Judge," who would then decide "whether or not a permanent order is issued." Tr. Vol. 2 at 185. The court held the hearing to make the ex parte order a permanent order on September 26. Both Hook and Boultinghouse attended that hearing, and Boultinghouse "agree[d] to the issuance of the Order for Protection." Ex. Vol. at 5. Later that same day, the court made the order for protection permanent and reiterated the same findings and advisements from the ex parte order. The permanent order automatically expires on September 20, 2019.

[5]     Nonetheless, about two months after the issuance of the permanent order for protection, Boultinghouse "pretty much" started living with Hook again. Tr. Vol. 2 at 136, 150. When later asked why she let Boultinghouse back into her home "even though there was a valid protective order" that Hook "still fe[lt she] needed," Hook responded, "[b]ecause I just did." *Id.* at 150.

[6]     On March 8, 2018, Boultinghouse and Hook got into an argument at her residence. During the argument, Boultinghouse was "yelling and hollering"; he "hit the wall," which resulted in a hole in the wall; he struck Hook's minor son;

and he "chased [Hook] around" the kitchen. *Id.* at 156-57. Hook called 9-1-1, and Boultinghouse drove away in Hook's car. Officers later arrested him.

[7] The State charged Boultinghouse with invasion of privacy, as a Class A misdemeanor, among other offenses. At his ensuing jury trial, Boultinghouse did not object to the admission of, or otherwise challenge, either the ex parte order for protection or the permanent order for protection. Instead, his defense focused exclusively on the credibility of the State's witnesses. The jury found Boultinghouse guilty of invasion of privacy, as a Class A misdemeanor, and the trial court entered its judgment of conviction and sentenced Boultinghouse accordingly. This appeal ensued.

## Discussion and Decision

### *Issue One: Constitutional Challenges*

[8] On appeal, Boultinghouse first asserts that the invasion of privacy statute, Ind. Code § 35-46-1-15.1(a) (2018), as applied to him[1] infringes on his constitutionally protected fundamental right to an intimate relationship, namely, his relationship with Hook. We review federal and state constitutional challenges *de novo*. *See, e.g.*, *Dycus v. State*, 108 N.E.3d 301, 304 (Ind. 2018). As

---

[1] As the Indiana Supreme Court has explained:

> A "facial challenge" is a claim that a statute, as written (i.e. "on its face"), cannot be constitutionally implemented. *See* Black's Law Dictionary 261 (9th ed. 2009) ("A [facial challenge is a] claim that a statute . . . always operates unconstitutionally."). A statute may also be challenged "as applied," that is, that the "statute is unconstitutional on the facts of a particular case or in its application to a particular party." *Id.*

*Meredith v. Pence*, 984 N.E.2d 1213, 1218 n.6 (Ind. 2013) (alteration and omission original to *Meredith*).

relevant here, Indiana Code Section 35-46-1-15.1(a) states that "[a] person who knowingly or intentionally violates: (1) a protective order to prevent domestic or family violence . . . commits invasion of privacy, a Class A misdemeanor."

[9] As an initial matter, the State argues that Boultinghouse has waived his constitutional arguments because he raises them for the first time on appeal. *See, e.g.*, *Leonard v. State*, 80 N.E.3d 878, 884 n.4 (Ind. 2017). However, "our appellate courts often address as-applied constitutional challenges on their merits for the first time on appeal." *Sandleben v. State*, 22 N.E.3d 782, 793 n.8 (Ind. Ct. App. 2014), *trans. denied*. Moreover, Indiana's appellate courts prefer to resolve appeals on their merits. *E.g.*, *Moriarity v. Ind. Dep't of Nat. Res.*, 113 N.E.3d 614, 623 (Ind. 2019). Accordingly, we exercise our discretion to address Boultinghouse's constitutional challenges.

[10] Boultinghouse asserts that his "conviction violates his substantive due process right to maintain intimate relationships" under the federal and state constitutions. Appellant's Br. at 23. In particular, Boultinghouse asserts that the invasion of privacy statute violates his "right to maintain a private and intimate relationship" with Hook, his former wife, where "they lived together in her house at her invitation; shared the same room; slept together in the same bed; shared the same car; provided rides for one another; lied for one another; procured medicine for one another; cared for the same child; and felt the most complex and powerful emotion—love—for one another." *Id.* at 27 (citations omitted). As a matter of federal constitutional law, the Supreme Court of the United States "has long recognized that freedom of personal choice in matters

of marriage and family life is one of the liberties protected by the Due Process Clause of the Fourteenth Amendment" to the United States Constitution. *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 639-40 (1974).

[11] However, the existence of and basis for Boultinghouse's purported right under the Indiana Constitution is less clear. The Indiana Supreme Court has never held that such a right exists under the Indiana Constitution. Boultinghouse does not specifically reference the Due Course of Law Clause from Article 1, Section 12 of the Indiana Constitution[2] in his brief, but his argument is analogous to a substantive due process argument, which is occasionally associated with that provision. *See, e.g.*, *Baird v. Lake Santee Reg'l Waste & Water Dist.*, 945 N.E.2d 711, 716 (Ind. Ct. App. 2011); *N.B. v. Sybinski*, 724 N.E.2d 1103, 1112 (Ind. Ct. App. 2000) (citing *Ind. High Sch. Athletic Ass'n, Inc. v. Carlberg*, 694 N.E.2d 222, 241 (Ind. 1997)), *trans. denied*. Alternatively, the Indiana Supreme Court has on rare occasions found implied rights under Article 1, Section 1.[3] *See Solomon v. State*, ___ N.E.3d ___, No. 18A-CR-2041, 2019 WL 386367, at *2 (Ind. Ct. App. Jan. 31, 2019) (collecting cases), *not yet*

---

[2] Article 1, Section 12 states: "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

[3] Article 1, Section 1 states:

> WE DECLARE, That all people are created equal; that they are endowed by their CREATOR with certain inalienable rights; that among these are life, liberty, and the pursuit of happiness; that all power is inherent in the people; and that all free governments are, and of right ought to be, founded on their authority, and instituted for their peace, safety, and well-being. For the advancement of these ends, the people have, at all times, an indefeasible right to alter and reform their government.

*certified*. However, the modern validity of that approach has been called into question. *See Morrison v. Sadler*, 821 N.E.2d 15, 31 (Ind. Ct. App. 2005) (discussing *Doe v. O'Connor*, 790 N.E.2d 985, 991 (Ind. 2003)). But we need not ascertain the precise legal basis for Boultinghouse's state constitutional argument, if there is one, to decide this appeal.

[12] Under federal substantive due process analysis, the State may not "directly and substantially" interfere with fundamental rights. *Zablocki v. Redhail*, 434 U.S. 374, 387 (1978). If it does, the State's action is subject to strict scrutiny. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988). "In order to survive strict scrutiny[,] a state action must be a necessary means to a compelling governmental purpose and be narrowly tailored to that purpose." *Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc.*, 643 N.E.2d 331, 337 (Ind. 1994). "Ordinary government activities" that do not infringe on fundamental rights, on the other hand, "must only satisfy a rational basis test, which requires merely that the law be 'rationally related to a legitimate governmental purpose.'" *Id.* (quoting *Clark*, 486 U.S. at 461).

[13] Our Court has held that the "state and federal substantive due process analys[e]s [are] identical." *N.B.*, 724 N.E.2d at 1112. Similarly, the Indiana Supreme Court has held that, even if judicially enforceable implied rights exist under Article 1, Section 1, the State may not impose a "material burden" on them. *See, e.g.*, *Clinic for Women, Inc. v. Brizzi*, 837 N.E.2d 973, 983-84 (Ind. 2005). The Indiana Supreme Court has held that the material-burden analysis

is, at least in some contexts, "equivalent" to the corresponding federal analysis under the Fourteenth Amendment's Due Process Clause. *Id.*

[14] With that background, and assuming for the sake of argument that Boultinghouse's relationship with Hook implicates his federal and state fundamental rights, we conclude that the invasion of privacy statute does not directly and substantially interfere with, and is not a material burden on, those rights. While evidence of Boultinghouse's relationship with Hook was a factual predicate to the issuance of the order for protection, that relationship is not an element of the offense of invasion of privacy, and the State did not need to present any evidence of that relationship to prove his commission of the offense. *See* I.C. § 35-46-1-15.1(a)(1). Rather, Boultinghouse violated the statute only when he knowingly or intentionally violated the terms of the order for protection. Thus, the statute neither directly and substantially interferes with nor materially burdens Boultinghouse's fundamental right to an intimate relationship with Hook. As the State says, "[a]t most, the statute operates . . . indirectly on such [rights] by penalizing individuals who have violated a valid court order . . . ." Appellee's Br. at 22.

[15] Further, Boultinghouse's complaints on appeal are more properly directed at the permanent order for protection than at the invasion of privacy statute. But the order for protection is an order collateral to Boultinghouse's criminal prosecution; it arose from a separate trial court proceeding at which Boultinghouse appeared and "agree[d]" to the need for the order and from which he did not appeal. Ex. Vol. at 5. By appearing before the court at the

hearing on the permanent order for protection and, at that hearing, having agreed to the issuance of the permanent order, Boultinghouse invited any error, constitutional or otherwise, in the issuance of the permanent order for protection. *See, e.g.*, *Wright v. State*, 828 N.E.2d 904, 907 (Ind. 2005). And, assuming he even could have done so, by not appealing the trial court's judgment in that cause directly, he forfeited any challenges he had to the validity of the order. *See, e.g.*, *Schlicter v. State*, 779 N.E.2d 1155, 1156-57 (Ind. 2002).

[16] In other words, Boultinghouse cannot now collaterally attack the validity of the order for protection under the guise of a challenge to the constitutionality of the invasion of privacy statute. The statute merely criminalizes the violation of the collateral order for protection; it is the order for protection that restricted Boultinghouse's movement and communication vis-à-vis Hook. Boultinghouse had his chance to argue against the order for protection during the prior proceedings, and his failure to do so then precludes him from doing so now. *See, e.g.*, *Wilkes v. State*, 984 N.E.2d 1236, 1240 (Ind. 2013) (quoting *Pruitt v. State*, 903 N.E.2d 899, 905 (Ind. 2009)).

[17] As the invasion of privacy statute does not infringe on Boultinghouse's fundamental rights, it is constitutional if it is rationally related to a legitimate governmental purpose. *Ind. Dep't of Envtl. Mgmt.*, 643 N.E.2d at 337 (quoting *Clark*, 486 U.S. at 461). Boultinghouse presents no argument supported by cogent reasoning that the statute, as applied to him, fails that test. Ind. Appellate Rule 46(A)(8)(a). And the statute provides a rational means for the

State to enforce its legitimate governmental interest in securing compliance with court orders entered to protect the victims of domestic or family violence. Boultinghouse does not have an unqualified liberty interest that supersedes the State's interest in the enforcement of its statutes and court orders. Accordingly, we hold that Boultinghouse's conviction under the invasion of privacy statute does not unconstitutionally infringe on his federal or state fundamental rights.

### Issue Two: Sufficiency of the Evidence

[18] Boultinghouse also asserts on appeal that the State failed to present sufficient evidence to show that he knowingly or intentionally violated the order for protection. *See* I.C. § 35-46-1-15.1(a). As our Supreme Court has stated:

> When an appeal raises "a sufficiency of evidence challenge, we do not reweigh the evidence or judge the credibility of the witnesses, and we respect a fact-finder's 'exclusive province to weigh conflicting evidence.'" *Joslyn v. State*, 942 N.E.2d 809, 811 (Ind. 2011) (quoting *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001)). We consider only the probative evidence and the reasonable inferences that support the verdict. *Tharp v. State*, 942 N.E.2d 814, 816 (Ind. 2011). "We will affirm 'if the probative evidence and reasonable inferences drawn from the evidence could have allowed a reasonable trier of fact to find the defendant guilty beyond a reasonable doubt.'" *Joslyn*, 942 N.E.2d at 811 (quoting *Tobar v. State*, 740 N.E.2d 109, 111-12 (Ind. 2000)).

*Phipps v. State*, 90 N.E.3d 1190, 1195 (Ind. 2018).

[19] The State presented sufficient evidence to support Boultinghouse's conviction. In particular, the State admitted into the record, without objection, the permanent order for protection. That order stated on its face both that

Boultinghouse was aware of the order and that he was prohibited from committing or threatening to commit further acts of domestic or family violence against Hook; from harassing, annoying, telephoning, contacting, or directly or indirectly communicating with Hook; and from being at Hook's residence, even if she invited him there. And both Hook and her son testified at Boultinghouse's trial that, after the issuance of that order, Boultinghouse was frequently at Hook's residence, frequently communicated with her, and, on March 8, 2018, had had an argument with Hook in which he chased her, yelled at her, punched a hole in a wall at her home, and struck her son.

[20] Undeterred, Boultinghouse argues on appeal that the State failed to make its case because, while Hook could not "waive or nullify" the order for protection by inviting Boultinghouse to her residence, I.C. § 34-26-5-11, she could somehow unilaterally "modify" the order to permit him to come to her home. *See* Appellant's Br. at 30-35. Boultinghouse further argues along those lines that it is absurd to construe the invasion of privacy statute otherwise and that the rule of lenity demands interpreting the statute favorably to Boultinghouse. We conclude that there is nothing ambiguous or absurd about the invasion of privacy statute; that Hook had no authority to unilaterally modify the court's order for protection; that no reasonable person would read the statutes and conclude otherwise; and that Boultinghouse's argument to the contrary on this issue is not supported by cogent reasoning.

[21] Boultinghouse further asserts that the State failed to show that he had knowingly or intentionally violated the order for protection. In particular, Boultinghouse argues as follows:

> the violation [of the order for protection] could not have been a knowing or intentional violation for the following reasons: 1) no evidence was introduced by the State that the "permanent" Order for Protection was distributed or served upon [Boultinghouse] in any manner, let alone the manner prescribed by the Indiana Trial Rules; 2) no evidence was introduced by the State that [Boultinghouse] was even aware of the existence of the "permanent" Order for Protection, let alone that he understood its terms; 3) no evidence was introduced explaining what "personally served" meant in relation to Deputy Loesch's testimony about the Ex Parte Order for Protection; 4) even if "personally served" meant actually physically handing the order to [Boultinghouse] . . . no evidence was introduced that [Boultinghouse] could read or understand the order; 5) in fact, the evidence in the form of testimony from Deputy Loesch about the order made clear that she simply assumed he knew what it meant; 6) no evidence was presented that [Boultinghouse] was ever made aware of Section [34-26-5-11] . . . of the Indiana Civil Protection Order Act or understood its terms; and most importantly 7) even if [Boultinghouse] knew about the order . . . the conduct of [Hook] . . . over the course of at least four (4) months could only be reasonably interpreted by [Boultinghouse] to mean that his conduct . . . was not a violation of the order.

Appellant's Br. at 36-37 (citations and footnotes omitted).

[22] We reject each of Boultinghouse's arguments. At trial, he did not object to the admission of the two orders for protection on the grounds that they were void for lack of service, and, in any event, we have held that proof of actual service

of an order of protection is not required to show a violation of the invasion of privacy statute. *See Dixon v. State*, 869 N.E.2d 516, 520 (Ind. Ct. App. 2007). Boultinghouse personally attended the hearing on the permanent order for protection, which satisfied the invasion of privacy statute's requirement that he knowingly or intentionally violated the order. He did not argue during his criminal trial that he lacked an awareness of or an understanding of either order for protection, and, in any event, Officer Loesch's testimony and the face of the permanent order for protection both unambiguously demonstrate that Boultinghouse knew of both orders and understood them. And we have likewise previously held that "lack of consent is not an element of invasion of privacy" and, therefore, "there is no element of that offense that [the protected person's] consent would negate." *Id.* Boultinghouse's arguments on appeal are contrary to law, are contrary to our standard of review for sufficiency issues, and are not well taken. We affirm his conviction.

[23] Affirmed.

Altice, J., concurs.

Pyle, J., concurs in result with separate opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christopher H. Boultinghouse, *Appellant-Defendant,* | Court of Appeals Case No. 18A-CR-1536 |
| v. | |
| State of Indiana, *Appellee-Plaintiff.* | |

**Pyle, Judge concurring in result with opinion.**

[24] I concur in the result reached by my colleagues, but I write separately to state that it is unnecessary to address any of Boultinghouse's constitutional claims. *See Hulse v. Indiana State Fair Board*, 94 N.E.3d 726 (Ind. Ct. App. 2018) (noting that appellate courts do not address constitutional claims if resolution can be reached on non-constitutional grounds). In addition, my colleagues hold, making an *assumption* that Boultinghouses's relationship has a constitutional dimension, that Indiana's invasion of privacy statute does not affect any of Boultinghouse's fundamental rights, and, as a result, is subject to only rational basis analysis. I believe this may not be correct.

First, my colleagues need not address the constitutional issues because Boultinghouse invited any error when he agreed to the permanent protective order. *Wright v. State*, 828 N.E.2d 904 (Ind. 2005) (a party may not take advantage of an error that he commits, invites, or which is the natural consequence of her own neglect or misconduct). In addition, Indiana Code §§ 35-34-1-6(a)(3) and 35-34-1-4(a) generally require that a motion to dismiss be filed when alleging a statute is constitutionally defective; failure to do so generally results in waiver of the issue on appeal. *See Payne v. State*, 484 N.E.2d 16, 18 (Ind. 1985); *Baumgartner v. State*, 891 N.E.2d 1131 (Ind. Ct. App. 2008). As Boultinghouse did not file a motion to dismiss involving the alleged constitutional infirmity surrounding the invasion of privacy statute, the issue is waived.

Second, I respectfully submit that my colleagues give too cursory an analysis to Boultinghouse's claim. I do not believe it is enough to state that because Boultinghouse's "relationship" is not an element of the offense, there cannot be a material impact on his fundamental rights. In fact, a strong argument can be made that Boultinghouse's right to maintain intimate relationships with others is materially burdened by Indiana's invasion of privacy statute. This is a right that is applied to the States through the Due Process Clause of the Fourteenth Amendment. I believe the facts of this case could support a finding that the statute in question undeniably burdens the right to maintain the sort of intimate relationships constitutionally protected from unwarranted government intrusion. In such a case, we would apply strict scrutiny analysis. But, it is also

likely that the statute might survive strict scrutiny analysis because it addresses a compelling governmental interest (preventing domestic violence), is narrowly tailored to meet that need, and is the least restrictive means for achieving the government's objective. Nonetheless, it is my view that wading into competing constitutional analyses is unnecessary in this case because Boultinghouse waived consideration of this issue by inviting the claimed error and failing to preserve the issue before the trial court. In all other respects, I concur in the result of my colleague's opinion.