The **INDIANA STATE BOARD OF EM-BALMERS AND FUNERAL DI-RECTORS, By Its Members, James A. Little, Joe Roberts, Jerry C. Ellenwood and Frances Ganaway, Defendants-Appellants,**

v.

**Celeste P. KAUFMAN, Plaintiff-Appellee.**

**No. 1–883A246.**

Court of Appeals of Indiana, First District.

May 21, 1984.

Rehearing Denied June 27, 1984.

occupants of emergency vehicles from the class of persons sought to be protected.

Linley E. Pearson, Atty. Gen., Frederick S. Bremer, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

Patricia Seasor Bailey, Stark, Doninger, Mernitz & Smith, Indianapolis, for plaintiff-appellee.

ROBERTSON, Judge.

The Indiana State Board of Embalmers and Funeral Directors (Board) held a hearing which resulted in the revocation of Celeste P. Kaufman's (Kaufman) funeral director's license. Kaufman sought judicial review of the Board's action and was successful in overturning the decision. The Board now appeals the trial court's ruling.

Because of the complexity of the cause, we shall set forth verbatim the Board's findings, conclusions, and judgment:

### FINDINGS OF FACT

1. Respondent, Celeste P. Kaufman, is a licensed embalmer, having embalmers license No. 3362 and a licensed funeral director, having funeral directors license No. 1351 heretofore issued by the Indiana State Board of Embalmers and Funeral Directors, and she was so licensed at all times material to these Findings of Fact.

2. By letter dated July 21, 1982, an application was received for a license and approval to operate a new funeral home at 421 W. 5th Avenue, Gary, Indiana, owned and operated as the Celeste P. Kaufman Funeral Home, Inc.

3. The letter of application names Celeste P. Kaufman, the respondent, as President of said corporation as well as one of the three directors.

4. Lori Anne Williams, daughter of a Robert Williams (Hereinafter called Robert Williams, Sr.) is named as Vice-President and Treasurer of said corporation as well as the other shareholder and one of the directors.

5. Of the issued shares, Lori Anne Williams owns at least 90 and perhaps 100, and respondent owns 10 in Celeste P. Kaufman Funeral Home, Inc.

6. The said named Robert Williams, Sr. is the father of Robert B. Williams, Jr., who is the President of Fern Oaks Cemetery, Inc. in Griffith, Lake County, Indiana.

7. Robert Williams, Sr. routinely assumes management responsibilities at Fern Oaks Cemetery with his son holding a titular role only.

8. The legal title to the real estate upon which the proposed funeral home is to be operated is in the name of Mercantile National Bank of Hammond, Indiana, as trustee under trust number 4213, with the beneficial ownership being in Fifth Avenue Associates, a limited partnership of record in Lake County, Indiana.

9. The Mercantile National Bank obtained approval for construction and remodeling for the funeral home from the Indiana Administrative Building Council for trust number 4213 with the examination fee being paid in person by the said Robert Williams, Sr. in the total sum of $90.00 cash.

10. Mr. Robert Williams, Sr. also entered into agreements with Larry Webb of Gary, Indiana, on behalf of Larry E. Webb Construction Company to perform the necessary construction and remodeling on the building containing the funeral home.

11. Robert Williams, Sr. directed all of the Kaufman Funeral Home construction and remodeling operations and paid at least $12,895 to Larry Webb for the work that he performed.

12. Part of the said payment to Larry Webb was in the sum of a check drawn in the amount of $12,895 which was stop payment, so that George A. Burns delivered a replacement check in the same amount to Larry Webb drawn on the Account of Fifth Avenue Associates.

13. The general partner for Fifth Avenue Associates is George A. Burns and the limited partner is Carole Patterson who is the daughter of Robert Williams, Sr., and she is also employed by Fern Oaks Cemetery and Ridgelawn Cemetery.

14. The funeral home is completely remodeled and ready to commence operations pending proper licensure by the Board.

15. The business of the Celeste P. Kaufman Funeral Home, Inc. is being conducted temporarily out of the offices of Ridgelawn Cemetery in Gary, Indiana.

16. Three children of Robert Williams, Sr. are the shareholders in a subchapter S corporation operating the Ridgelawn Cemetery in the name of Ridgelawn Cemetery Association, Inc. in Gary, Indiana.

17. In late September and early October 1982, Robert Williams, Sr. signed and caused to be issued four checks on the account of Ridgelawn Cemetery Association, Inc.

18. George A. Burns is the drawee on two of the aforesaid Ridgelawn checks payable to him in the amounts of twenty-five thousand dollars ($25,000) and seven thousand eight hundred forty-two dollars and ninety-five cents ($7,842.95) which he deposited in his personal account at the Calumet National Bank.

19. Carole Patterson is the drawee on the remaining aforesaid Ridgelawn checks payable to her in the amounts of twenty-five thousand dollars ($25,000) and seven thousand eight hundred forty-two dollars and ninety-six cents ($7,842.96) which she deposited in her personal account at the Bank of Indiana.

20. In October 1982, George A. Burns and Carole Patterson transferred the aforesaid sums which they had received from Ridgelawn from their personal accounts to the account of Fifth Avenue Associates in the Calumet National Bank.

21. The aforesaid Fifth Avenue Associates Account was used to pay for much, if not all of the expense associated with remodeling the Kaufman Funeral Home.

22. At least forty thousand dollars ($40,000) in additional money from Ridgelawn supplementing the aforesaid Ridgelawn checks was handled through George A. Burns and Carole Patterson to the Fifth Avenue Associates Account.

23. In the case of the aforesaid work done by Larry W. Webb, Robert Williams, Sr. contracted to spend in part the very money which originated by means of checks drawn and signed by him on the account of Ridgelawn Cemetery Association, Inc.

24. Respondent directly received five thousand dollars ($5,000) from Robert Williams, Sr. to pay utility bills and possibly other expenses of Kaufman Funeral Home.

25. There was uncontradicted testimony to the effect that the aforesaid monies received by George A. Burns, Carole Patterson and Fifth Avenue Associates had to be repaid with interest at the rate of twelve percent (12%) to Ridgelawn Cemetery Association, Inc. although this obligation of repayment is not based on any written document other than the actual checks from Ridgelawn.

26. There was uncontradicted testimony to the effect that the aforesaid five thousand dollars ($5,000) paid by Robert Williams, Sr. to Celeste P. Kaufman had to be repaid pursuant to a note not yet prepared or signed, there being no other written evidence of the loan other than the actual check by which the loan was made.

27. During the remodeling of the Kaufman Funeral Home, furniture and fixtures

for it were temporarily stored at Fern Oaks Cemetery.

28. Upon approval of the Kaufman Funeral Home for licensure by the State Board of Embalmers and Funeral Directors, the respondent acting on behalf of Celeste P. Kaufman Funeral Home, Inc. is prepared pursuant to agreement, to execute a lease as lessee with Mercantile National Bank trustee under trust number 4213 as lessor agreeing to lease the Kaufman Funeral Home for fifteen hundred dollars ($1500) per month. This lease is not yet entirely prepared for signatures.

29. The sole asset of Celeste P. Kaufman Funeral Home, Inc. is what is left of the aforesaid five thousand dollars ($5,000) loan by Robert Williams, Sr.

30. Fern Oaks Cemetery, Inc. is doing business as Calumet Pre-need Company out of the cemetery office.

31. Since the summer of 1982, persons employed by the Calumet Pre-need Company as counselors, have entered into "retail installment contracts" with residents of Lake County, Indiana, arranging for Calumet Pre-need Company to represent individuals purchasing the contracts in obtaining pre-paid funeral services.

32. In two cases the agents of Calumet Pre-need Company explained to purchasers of the said "retail installment contracts" that the contracted for funeral services would be held at Kaufman Funeral Home.

33. At least one of the counselors would routinely tell purchasers of the pre-need contracts that the funeral services would be conducted at Kaufman Funeral Home.

34. Over several months duration Robert Williams, Sr. attempted to negotiate with a Gary, Indiana funeral director called Edward W. Towns to go into partnership together and incorporate Edward Towns' [sic] Funeral Home in Gary where this newly incorporated home would be the beneficiary of pre-need service contracts to be sold through a corporation to be formed by Robert Williams, Sr., as well as the beneficiary of other money from Robert Williams, Sr., all pursuant to a proposed corporation structure placing Towns at the mercy of Lori Anne Williams as the respondent is so placed in the corporate structure of the Celeste P. Kaufman Funeral Home, Inc.

35. Robert Williams, Sr. also attempted to participate in the funeral directing business with Edward Towns by renovating a building located at 1100 Clark Road, Gary, Indiana.

36. Robert Williams, Sr. also tried to put Violet E. Hower, who is another funeral director, in the building now called the Kaufman Funeral Home and set her up in the funeral service business there.

37. Respondent has combined with, associated with and joined with Robert Williams, Sr. in the funeral directing business even though he is not an officer, director or shareholder of Celeste P. Kaufman Funeral Home, Inc. by reason of the following:

a. Lori Anne Williams, who has the full legal right through her majority interest to control the said corporation and the respondent, is nothing more in her telling youthful ignorance of corporate affairs than a name, a signature and an extension of her father, Robert Williams, Sr. and his driving ambition to control a funeral home in the City of Gary, Indiana to which contracts for pre-need funeral services solicited by his eager counselors working out of Fern Oaks Cemetery may be fulfilled.

b. It is reasonably inferred that the aforesaid subservient role of Lori Anne Williams is part of a pattern already established by Robert Williams, Sr. to put her and himself in charge of the Edward W. Towns Funeral Home to service the said pre-need contracts.

c. It is obvious from the testimony that Robert Williams, Sr. customarily uses his children as executives of his various businesses while holding to himself the final word on how those businesses are operated. He is very much in charge.

d. There are indications in the record and in these findings that the customarily controlling relationship of Robert Williams, Sr. to the businesses for which his

children serve as executives holds true in the case of Lori Anne Williams and the Celeste P. Kaufman Funeral Home, Inc. The said indications are as follows:

(1) The dependency of the favorable fifteen hundred dollar per month lease on the involvement of a corporation controlled by Lori Anne Williams. It is significant that the respondent was not able to work out his favorable lease in her name without the controlling involvement of the Williams family.

(2) The heavy financial involvement of Robert Williams, Sr. in the new business to the extent that it would not be possible without his money generated by him. The respondent would have nothing to lease without the Williams' family fortune, and it is reasonably inferred that Lori Anne Williams is in place to protect the investment of her father.

(3) The inadequate knowledge of corporate affairs revealed by the testimony of Lori Anne Williams from which it is reasonably inferred that she, of necessity, plays no substantial or critical role in management of the corporate business and that someone else must do that for her.

38. Respondent has a direct financial relationship to a cemetery operation, by her acceptance and use of the five thousand dollar ($5,000) loan from Robert Williams, Sr. who operates Fern Oaks Cemetery.

39. That in the performance of its statutorily delegated duties and responsibilities, the State Board of Embalmers and Funeral Directors possesses and exercises special administrative expertise in determining whether or not certain practices and activities relate to the competent practice of embalming and funeral directing and/or whether or not such practices constitute incompetent practice of embalming and funeral directing.

## CONCLUSIONS OF LAW

1. Respondent, Celeste P. Kaufman, violated Indiana Code 25–15–1–11.1, in that the respondent has knowingly violated a rule adopted by the Board establishing a standard for the competent practice of embalming and the operation of funeral homes and establishments to wit: The rule codified at 832 IAC 1–1–14 [1] forbidding a person licensed by the Board to have directly or indirectly any interest in or financial relation to any cemetery operation while licensed by the Board in the State of Indiana and further preventing such licensee from joining with, combining with, or associating in the funeral directing business with any person if such person has any interest in any cemetery property or cemetery operation.

2. Respondent, Celeste P. Kaufman, violated Indiana Code 25–15–1–11.1, in that the respondent has continued to practice funeral directing although she has become unfit to practice due to professional incompetence through violation of a promulgated rule of the Board, to wit: The rule codified at 832 IAC 1–1–14 forbidding a person licensed by the Board to have directly or indirectly any interest in or financial relation to any cemetery operation while licensed by the Board in the State of Indiana and further preventing such licensee from joining with, combining with, or associating in the funeral directing business with any

---

1. The rule in its entirety reads:

No person licensed by the State Board of Embalmers and Funeral Directors of Indiana shall in any way, either directly or indirectly, have any interest in or financial relationship to any cemetery property or cemetery operation while licensed by this Board in the State of Indiana. No such licensee shall in any way join with, combine with, or associate in the funeral directing business with any person, whether licensed by this Board or not, when and if such person has any such interest, directly or indi-rectly, in any such cemetery property or cemetery operation. No person licensed by this Board shall in any way, directly or indirectly, engage in any solicitation, plan, scheme or other device which would in any way result in the formulation or operation of a funeral establishment on cemetery property or which would in any way mislead the public or tend to lead the public to believe that such funeral establishment is connected with or part of a cemetery operation or cemetery property.

person if such person has any interest in any cemetery property or cemetery operation.

3. The Board has the authority to impose any of the following sanctions singly or in combination, upon its finding or wrongdoing by the respondent.

(1) Permanently revoke respondent's licenses.

(2) Suspend respondent's licenses.

(3) Censure respondent.

(4) Issue a letter of reprimand to respondent.

(5) Place the respondent on probation and require the respondent to:

(A) Report regularly to the Board upon the matters which are the basis of probation;

(B) Limit respondent's practice to those areas prescribed by the Board.

### ADMINISTRATIVE ORDER
### NUMBER SBEFD83-1

Based upon the foregoing Findings of Fact and Conclusions of Law, it is ordered that Funeral Directors License # 1351 heretofore issued to respondent, Celeste P. Kaufman, is hereby revoked.

Kaufman filed a petition for judicial review in the Superior Court of Marion County. The Board unsuccessfully objected to the venue, then filed a motion for a change of venue from the county and a motion to dismiss because of improper venue. Venue was taken to the Shelby Superior Court where the motion to dismiss was denied, and the judicial review was subsequently held.

The judgment of the trial court first detailed the procedural path of the case and made reference to the applicable regulation. It then continued:

10. The Findings of Fact and Conclusions of Law of the Board indicate that the determination of Kaufman's violation of the regulation is based on the activities of other persons.

11. The Findings of Fact and Conclusions of Law of the Board, the evidence presented at the hearing and all reasonable infer-

ences thereof do not demonstrate that Kaufman knew of, approved, encouraged, participated in or had control of the activities of such other persons.

12. The Findings of Fact and Conclusions of Law of the Board, the evidence presented at the hearing and all reasonable inferences thereof do not demonstrate that Kaufman has a right to direct or control the activities of such other persons.

13. The evidence of the activities of other persons, without evidence that Kaufman knew of, approved, encouraged, participated in, or had control of such activities; cannot serve as the basis for a violation of the regulation by Kaufman.

14. The activities of persons who Kaufman had no right to direct or control cannot serve as the basis for the violation of the regulation by Kaufman.

15. There is no evidence to support the finding of fact that Kaufman directly received $5,000 from Robert Williams, Sr. to pay utility bills and possibly other expenses of Kaufman Funeral Home, Inc.

16. There is no evidence that Lori Anne Williams had agreed to abide by any and all decisions of her father, Robert Williams, Sr.

17. Insufficient evidence was presented to demonstrate that Lori Anne Williams is a complete extension of her father, having no recognizable existence, incapable of making her own decisions and bound to blindly follow the decisions of her father, Robert Williams, Sr.

18. There is no evidence presented that supports a finding that the lease terms for the funeral home facility were favorable.

19. There is no evidence to support the statement that Kaufman was not able to work out favorable lease terms in her own name without the controlling involvement of the Williams family.

20. There is no evidence presented that would support the allegation that Kaufman Funeral Home, Inc. could not have become operational without the heavy financial involvement of Robert Williams, Sr., when

the only loan to the corporation was a small loan from another corporation, of which Robert Williams, Sr. has no ownership interest.

21. The decision of the Board regarding Kaufman is contrary to law and is unsupported by the evidence presented at the hearing and all reasonable inferences thereof.

22. The regulation itself cannot be justified as an exercise of the health powers or the general police powers of the State because no health problems are regulated by the regulation and the public interest is hindered rather than protected by the regulation as promulgated and as interpreted by the Board.

23. The regulation, as promulgated and as interpreted by the Board, attempts to regulate more than the operation of funeral homes, since Kaufman was found to have violated the regulation when she was not operating a funeral home.

24. The regulation was not written with sufficient precision to give Kaufman fair warning as to what the Board would consider in making its decision.

25. The decision of the Board and its interpretation of the regulation were not in accordance with previously stated, ascertainable standards as required by the due process clause of the United States Constitution.

26. The decision of the Board and its interpretation of the regulation with regard to Kaufman is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the law.

27. Kaufman Funeral Home, Inc. leased certain facilities through a trust whose beneficiary was a limited partnership, it being clear that the general partner had no ownership or financial interest in a cemetery.

## CONCLUSIONS OF LAW

1. The sole basis for finding a violation of Sections 25–15–1–11.1(b)(3) and (b)(4)(A) of

the Indiana Code by Kaufman is the underlying violation of the regulation.

2. The regulation is void and cannot form the underlying basis for revocation of a funeral directors license because the promulgation of the regulation cannot be justified as an exercise of the broad health powers of the State or for the specifically enumerated purposes of preventing the spread of infectious and contagious disease, or of protecting the sanitation, health and welfare of the people of the State.

3. The regulation is outside the scope of the authority delegated to the Board because the regulation as promulgated and as interpreted by the Board attempts to regulate more than the operation of a funeral home which is the statutory limitation on (sic).

4. The decision and the regulation upon which such decision was based are in excess of statutory jurisdiction, authority or limitation or short of statutory right.

5. The constitutional rights of Kaufman were violated by the decision because the decision of the Board and its interpretation of the regulation were not in accordance with previously stated, ascertainable standards as required by the due process clause of the United States Constitution.

6. The decision and the Board's interpretation of the regulation upon which the decision was based are contrary to constitutional right, power, privilege or immunity.

7. The decision of the Board and its interpretation of the regulation with regard to Kaufman are arbitrary, capricious, and abuse of discretion and otherwise not in accordance with the law.

8. The decision of the Board is not supported by substantial evidence regarding the activities, involvement, participation and knowledge of Kaufman which is sufficient to warrant the finding of that the regulation was violated and that, therefore, section 25–15–1–11.1(b)(3) and section 25–15–1–1.1(b)(4)(A)[2] of the Indiana Code were violated.

**2.** 25–15–1–11.1 Practitioner; definition; stan-

dards of practice; sanctions; grounds; submis-

## JUDGMENT

The decision of the Board to revoke Funeral Directors License No. 1351 which was held by Kaufman is hereby set aside, and this cause is remanded to the Board with directions to reinstate Funeral Directors License No. 1351 to Kaufman no later than at the regularly scheduled August meeting of the Board in accordance with the above findings of fact and conclusions of law.

Restated, the four issues argued on appeal by the Board are whether the venue of the trial court was proper; whether the regulation involved is outside the scope of regulatory authority of the Board; whether the regulation involved is unconstitutional because of a failure to fairly notify a licensee of constitutionally ascertainable standards; and, whether there was constitutional evidence in the record to support the Board's adjudication.

The Board's first issue questions the trial court's denial of the objection to venue and a motion to dismiss because of improper venue in that Kaufman sought judicial review of the Board's ruling in Marion County. The Board also argues, for several reasons, that the sole proper venue would have been in Lake County where Kaufman resides and practiced her profession. The Board directs us to IND.CODE 4–22–1–14 in support of its argument. The pertinent part of that statute reads:

> ... Such review may be had by filing with the circuit or superior court of the county in which such person resides, or in any county in which such order or determination is to be carried out or enforced a verified petition ...

On the other hand, Kaufman relies upon T.R. 75(D) which supercedes other venue statutes as authorizing judicial review in Marion County.

Regardless of the interplay between the statute and the trial rule, a more basic premise decides the issue. The fact is that the Board has not demonstrated harm or prejudice by Kaufman seeking judicial review in Marion County. Such a showing is required, in our opinion, prior to finding reversible error. *Martin v. Indpls. Morris Plan Corp.*, (1980) Ind.App., 400 N.E.2d 1173. There is no question that the harmless error doctrine applies to the judicial review of administrative hearings. *Swingle v. State Employees' Appeal Com'n.*, (1983) Ind.App., 452 N.E.2d 178; *Indiana State Highway Commission v. Indiana Civil Rights Commission*, (1981) Ind.App., 424 N.E.2d 1024; *Department of Financial Institutions v. Colonial Bank & Trust Company*, (1978) 176 Ind.App. 368, 375 N.E.2d 285. An appellant has the burden of showing reversible error. *State Board of Tax Commissioners v. Oliverius*, (1973) 156 Ind.App. 46, 294 N.E.2d 646.

To be sure, a judicial review in Lake County would have been proper, however, in light of the record and the geographic convenience to the Board, error, if any, does not rise to the reversible level.

Prior to a discussion of the second issue, the scope of regulatory authority, an examination of the pertinent statutes would be proper. IND.CODE 25–15–1–1 through 25–15–1–15 is the statutory scheme relating to the licensing of embalmers and funeral directors. The policy statement is contained at I.C. 25–15–1–1 and reads:

> It is hereby declared that this act shall be deemed an exercise of the health powers of the state for the prevention of the spread of infectious and contagious diseases; for the protection of the sanitation, health and welfare of the people of the state and that all of the provisions of

sion to examination

....
(b) A practitioner shall conduct his practice in accordance with the standards established by the board under section 5.1 of this chapter and is subject to the exercise of the disciplinary sanctions under subsection (e), if, after a hearing, the board finds:

(3) a practitioner has knowingly violated any rule adopted by the board under section 5.1 under this chapter;
(4) a practitioner has continued to practice although he has become unfit to practice due to:
(A) professional incompetence.

this act and regulations authorized to be made are necessary to effectuate its purpose; and all of the provisions of this act shall be construed liberally.

I.C. 25–15–1–5 defines the powers of the State Board of Embalmers and Funeral Directors as:

(a) Investigate and report violations of this act and violations of the rules and regulations of the board to the prosecuting attorney of the county in which such violations are committed, or to the attorney-general or to the grand jury of the county in which such violations are committed.

(b) Make, promulgate, alter, amend or repeal rules and regulations for the conduct of the meetings of the board, and for the holding of license examinations and license revocation hearings before such board for the granting and revocation of licenses, for the practice of embalming and the operation of funeral homes and establishments, and for the enforcement of any of the rules and regulations adopted and promulgated by the board and as set out in this act.

(c) Examine and inspect all premises and equipment, used or proposed to be used by licensed funeral directors or applicants for such licenses, and to determine the suitability of such premises and the adequacy of such embalming equipment as a basis for the issuance of an initial funeral directors' license or the refusal to so issue.

(d) Hold examinations for embalmers' licenses and funeral directors' licenses at times and places prescribed by the board; Provided, however, That embalmers' examinations shall be held once in each calendar year, and funeral directors' examinations shall be held once in each calendar year.

(e) Issue and/or revoke embalmer's licenses and funeral directors' licenses to individuals as provided by this act and prescribed by the rules and regulations of the board.

(f) To require the aid of the state and any and all local boards of health and health officials throughout the state of Indiana in fixing and enforcing standards of cleanliness, disinfection and sanitation for all premises which are used in the profession of embalming or funeral directing.

It is the Board's argument that the trial court was in error in making findings of fact 22 and 23 and in its conclusion of law 2 and 3, which have the collective effect of saying that the Board exceeded its statutory authority in passing and enforcing the regulation for forbidding any interest or financial relationship by a license holder with or to a cemetary operation or property. The argument advanced by the Board is that I.C. 25–15–1–5(b) authorizes regulation of *funeral homes or establishments.* (Board's emphasis). The Board continues by asserting that the term is ambiguous thereby freeing the reviewing court to interpret its meaning with an end result being that the word "establishment" equates to the act of conducting business. Such a result is further authorized, it is argued, by the admonition contained in I.C. 25–15–1–1 which says the act shall be liberally construed.

It is the essence of Kaufman's primary argument that the questioned regulation exceeds the legislative authority granted to the Board for the reason that the purpose to be served is one of public health and sanitation, and not the business relations of licensed funeral directors.

■ A keystone of administrative law is the proposition that an administrative agency has no powers which are not expressly or impliedly granted by statute. *Gordon v. Review Bd. of Indiana Employment Sec. Division,* (1981) Ind.App., 426 N.E.2d 1364; *Indiana State Bd., etc. v. Keller,* (1980) Ind., 409 N.E.2d 583. All doubtful claims to a power claimed by a governmental agency must be resolved against the agency. *Indiana Civil Rights Commission v. Holman,* (1978) 177 Ind.App. 648, 380 N.E.2d 1281; *Monon Railroad Company v. Citizens of Sherwood Forest, Marion County,* (1969) 146 Ind.App. 620, 257 N.E.2d 846; *Good v. Western Pulaski*

*County School Corp.*, (1965) 139 Ind.App. 567, 210 N.E.2d 100. The administrative agency can only exercise its powers in conformity with the statutes. *Boone County Rural Elec. Membership Corp. v. Public Service Commission of Ind.*, (1958) 129 Ind.App. 175, 155 N.E.2d 149.

With these standards in mind, we turn to a review of the record and I.C. 25-15-1-1 *et seq.* The statutes governing funeral directors and embalmers contain a number of sections whose purpose clearly include the public health and sanitation in the disposal or burial of dead human bodies. However, there are other sections which seemingly regulate economic or business aspects of the profession and still others which apparently relate to consumer protection. As an example, I.C. 25-15-1-6 (issuance of licenses; requirements and qualifications for business of funeral directing; corporation activities; examination) contains a number of restrictions and prohibitions as to who, when and where a license may or may not be issued or held.

We further note that in the instant case there is no evidence in the record to provide a nexus between the disputed regulation and the statute or statutes defining the Board's powers, authority, and responsibilities. Kaufman's attorney attempted to get such testimony in the record at the administrative hearing by questioning an officer of the Board (and who was a member of the Board at the time the regulation was adopted), however, an objection to this line of questioning was successful thereby thwarting the attempt. Additionally, we are of the opinion that a fair reading of the disputed regulation does not reveal where it ties into the applicable provisions of I.C. 25-15-1-1 *et seq.*, or for that matter, even identifies the practice which either needs to be prevented, corrected, or regulated.

There is no evidence in the record to support the Board's position. As stated in *DeHart v. Anderson*, (1978) 178 Ind. 581, 383 N.E.2d 431:

> Except in those cases where judicial notice is appropriate, nothing is presented to the Court where nothing is offered as evidence.

We must conclude, given the facts, the record, and the respective arguments, that the trial court did not err in determining that the Board was acting beyond permissive statutory parameters. *Ind. Civil Rights Commission, Good,* and *Monon Railroad Company, supra.*

Finding as we have a decision on the merits of the other two issues is not required.

Judgment affirmed.

NEAL, P.J., and RATLIFF, J., concur.