## FOR PUBLICATION



**FILED**
Aug 23 2013, 5:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MATTHEW S. TARKINGTON**
Lewis & Kappes, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE,
State of Indiana:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES,
The Trustees of Purdue University and
  Charles A. Hibberd:

**BARRY L. LOFTUS**
**JORDAN J. SZYMIALIS**
Stuart & Branigin, LLP
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JORDAN PARKER, a minor, individually, and by )
JAMES PARKER and CHERYL PARKER, as )
Natural parents and next friends of Jordan Parker, )
)
    Appellant-Petitioner, )
)
        vs. )    No. 49A02-1212-PL-1003
)
INDIANA STATE FAIR BOARD, an agency of )
The State of Indiana, )

|  | ) |
| Appellee-Respondent, | ) |
|  | ) |
| THE TRUSTEES OF PURDUE UNIVERSITY | ) |
| and DR. CHARLES A. HIBBERD, | ) |
|  | ) |
| Appellees/Intervenors. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Michael D. Keele, Judge
Cause No. 49D07-1205-PL-19708

**August 23, 2013**

**OPINION – FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Jordan Parker, a minor, individually, and by James Parker and Cheryl Parker, as his parents and next friends (collectively, "the Parkers") appeal the trial court's denial of their petition for judicial review of a decision by the Indiana State Fair Board (the "Board"). We affirm in part, reverse in part, and remand.

## Issues

The Parkers raise several issues. We reorganize and restate the dispositive issues as:[1]

> I. whether application of the Indiana State Fair's Handbook violated the Administrative Orders and Procedures Act ("AOPA");
>
> II. whether the administrative proceedings were improper due to ex parte communications; and

---

[1] The Parkers also argued that they were denied their equal protection rights and that the prohibition against excessive and unconstitutional penalties was violated.

2

III.     whether the Parkers were denied their due process rights.

**Facts**

In August 2011, fifteen-year-old Jordan entered a lamb at the Indiana State Fair. Jordan and his mother, Cheryl, signed the "Sheep Enrollment Form." Appellants' App. p. 275. By doing so, Jordan agreed "to follow the rules, policies and expectations of the 4-H program" and to "conduct [himself] in a courteous and respectful manner by exhibiting good sportsmanship and good behavior." Id. Jordan agreed that "failing to do so will result in sanctions, discipline, and/or dismissal from the program." Id. By signing the form, Cheryl also agreed to "abide by, follow, and comply with the rules, policies and expectations of the 4-H program" and to "conduct [herself] in a courteous and respectful manner by exhibiting good sportsmanship and being a positive role model for youth." Id. Cheryl agreed that "failing to do so will constitute grounds for sanctions and/or dismissal of the member from the program." Id.

Jordan and Cheryl also signed the "4-H Animal Affidavit," which provided: "My submission of a 4-H entry expressly binds me to all terms and conditions contained in any and all parts of the Indiana State Fair 4-H/FFA Handbook/Premium List, to include, but not limited to, consent to drug, steroid, tissue tests, examination of my animal's carcass . . . as a condition of entering the Indiana State Fair." Id. at 277. The Indiana State Fair 4-H/FFA Handbook/Premium List ("Handbook") contained General Terms and Conditions that prohibited the animals from having drugs, steroids, or chemicals at greater than federally established standards. The Handbook also provided: "The test

3

results from the testing laboratories are final and binding upon the exhibitor, the exhibitor's parents and/or legal guardian even if the exhibitor, or the parents and/or guardians did not administer the drug or foreign substance to the exhibitor's animal. . . ." Id. at 172.

Jordan's lamb won the Grand Champion Market Lamb and participated in the Sale of Champions, where it sold for $23,300. The lamb was then transported to the Purdue Meat Lab, where it was slaughtered and drug testing samples were taken. The drug testing was performed at the Indiana Animal Disease and Diagnostic Laboratory. Two urine samples tested negative for foreign substances. However, a retinal sample tested positive for the presence of Zilpaterol, which is not FDA-approved for sheep. Zilpaterol is a feed additive used in cattle to "enhance leanness and growth rates." Id. at 157. The second retinal sample was sent to the Texas Veterinary Medical Diagnostic Laboratory, and the second retinal sample was also positive for Zilpaterol. Both samples were completely exhausted through the testing.

On September 20, 2011, the Board notified Jordan of the positive Zilpaterol testing and informed him of the following penalties: (1) a disqualification and forfeiture of all entry and other fees and all premiums, trophies, and awards from the Sheep Department, including sale proceeds from the Sale of Champions; (2) a two-year ban from the Sheep Department; (3) a permanent ban from participation in any 4-H sale at the Indiana State Fair; and (4) a lifetime ban from all participation in the Indiana State Fair in the event of further infractions. The Board informed the Parkers that they could appeal this decision within fifteen days pursuant to the procedures set out in the Handbook.

4

On October 1, 2011, the Parkers appealed the September 2011 decision and contended that they had never administered Zilpaterol to the lamb. Pursuant to the Handbook, the Board scheduled an appeal hearing before three members of the Board ("ALJ Panel"). On March 5, 2012, the Parkers filed a motion for summary judgment. In their motion, the Parkers argued that the retinal testing results were inadmissible because they were unable to perform independent testing of the retinal material. All of the retinal material had been exhausted during the prior testing. The Parkers claimed due process required that they have an opportunity to perform independent testing. Because there was no other evidence of the Zilpaterol, the Parkers argued that, if the retinal testing was inadmissible, they were entitled to have the Board's decision revoked.

On March 23, 2012, the Board filed its response to the Parkers' motion for summary judgment and filed its own motion for summary judgment. The Board argued that the Parkers were bound by their agreement that the test result were final and binding. The Board also argued that the Parkers' due process claim failed because: (1) Jordan did not have a constitutionally protected property interest in participation in the State Fair or the 4-H sale at the State Fair; (2) Jordan was given all of the due process required under the circumstances; and (3) due process did not require that the Parkers have an opportunity for independent testing.

The Parkers filed a combined reply to the Board's motion for summary judgment and in support of their own motion for summary judgment. The Parkers argued that: (1) Jordan had a property right in the lamb, the sale proceeds, his reputation, and continued participation in the State Fair; (2) Jordan was entitled to a "due process" hearing to

5

challenge the drug test results; (3) the denial of a "due process" hearing would violate the equal protection clause; (4) Jordan did not knowingly, voluntarily, and intelligently waive his constitutional rights by agreeing to the terms of the Handbook; (5) Jordan, a minor, could not waive his constitutional rights; (6) the Board's rules were not drafted pursuant to Indiana Code Chapter 4-22-2; (7) the punishment was excessive under the Indiana Constitution; and (8) the Board's policy of the test results being final and binding was unconstitutional on its face.

The Board then filed a response to the Parkers' arguments. The Board again argued that Jordan did not have a constitutionally protected property right and that he had no constitutionally protected right to participate in the State Fair. The Board argued that the Parkers' equal protection argument failed because they had elected to proceed via summary judgment rather than an evidentiary hearing. Finally, the Board argued that the lack of independent testing did not require the exclusion of the testing results, the Parkers' waiver argument failed because comparisons to the juvenile waivers in the criminal justice system were inappropriate, and the excessive punishment argument failed. Finally, the Parkers filed a sur-reply addressing the same issues.

An oral argument was held before the ALJ panel regarding the motions for summary judgment on April 12, 2012. The ALJ panel filed its "Recommended Findings of Fact, Conclusions of Law and Final Order Granting [the Board's] Motion for Summary Judgment and Denying [the Parkers'] Motion for Summary Judgment." Appellants' App. p. 41. The Recommended Order provided, in part:

6

1. The [Board] was created by Indiana Code § 15-13-15-1. It is required to "hold an agricultural fair each year emphasizing agriculture and agribusiness." IC § 15-13-7-1. The [Board] has duly enacted General Terms and Conditions to implement the responsibilities granted by the legislature.

2. The General Terms and Conditions are a valid exercise of the authority granted [the Board] by the General Assembly. Id.

3. When [the Board] received confirmation that [the Parkers'] lamb tested positive for Zilpaterol, a substance not approved by the U.S. Food and Drug Administration, [the Board was] within their authority under the General Terms and Conditions to assess the penalties it did against [Jordan].

4. [Jordan's] and his parent's signatures on the enrollment form and 4-H Animal Affidavit bound them to the General Terms and Conditions, including but not limited to the "final and binding" nature of the results of the drug testing conducted on the Lamb even if [Jordan], his parents, and/or guardians did not administer Zilpaterol to the Lamb.

\* \* \* \* \*

9. The General Terms and Conditions give the [Board] broad discretion to interpret its rules, administer a drug testing program and assess appropriate penalties. There are no "factual conditions" delineating entitlements in the General Terms and Conditions that give rise to procedural due process rights. [Fincher v. South Bend Heritage Found., 606 F.3d 331, 334 (7th Cir. 2010), cert. denied.]

10. No constitutionally protected property interest exists in this Matter entitling [the Parkers] to procedural due process. The only due process to which he is entitled is the procedures outlined in the [Board's] General Terms and Conditions. See Turner v. City of Kokomo,

7

> 804 N.E.2d 272, 275 (Ind. Ct. App. 2004), <u>reh'g</u>
> <u>denied</u>, <u>trans. denied</u>.

11. As a matter of law, [the Parkers] are not entitled to summary judgment under Indiana Code § 4-21.5-3-23.

12. As a matter of law, [the Board] is entitled to summary judgment under Indiana Code § 4-21.5-3-23.

<u>Id.</u> at 44-45. The ALJ Panel "affirmed and adopted" the September 2011 decision regarding Jordan and his animal.

The Parkers filed their objections to the ALJ Panel's decision, and the Board responded to the objections. The full Board conducted a hearing on the Recommended Order on May 10, 2012. At the beginning of the hearing, board member Dr. Charles Hibberd, the director of the Cooperative Extension at Purdue University, recused himself. The Board president noted that Dr. Hibberd would not participate or vote on the matter but would be allowed to hear the arguments. After arguments by counsel, the Board discussed the matter. At that time Dr. Hibberd made comments regarding the testing procedures. The Parkers' counsel objected to Dr. Hibberd giving testimony, but Dr. Hibberd continued making comments. The Board voted to affirm the ALJ Panel's Recommended Order.

The Parkers filed a petition for judicial review on May 15, 2012. The Board filed a brief in opposition to the petition for judicial review, and the Parkers filed a reply. After a hearing before the trial court, the trial court entered findings of fact and conclusions thereon denying the Parkers' petition for judicial review. The trial court found that: (1) the Board did not act in excess of its statutory authority in promulgating

8

the Handbook's General Terms and Conditions; (2) by agreeing to be bound by the General Terms and Conditions, the Parkers waived their right to challenge the test results; (3) the Parkers did not have a constitutionally protected interest at stake; (4) even if they had a constitutionally protected interest, the Board's procedures comported with due process; (5) the Parkers' equal protection rights were not violated; and (6) the penalties were not excessive. The Parkers now appeal.

## Analysis

The parties do not dispute that the Administrative Orders and Procedures Act ("AOPA") governs this action. See Ind. Code Article 4-21.5. When we review the decision of an administrative agency, we are bound by the same standard as the trial court. Musgrave v. Squaw Creek Coal Co., 964 N.E.2d 891, 899 (Ind. Ct. App. 2012), trans. denied. We do not try the case de novo and do not substitute our judgment for that of the agency. Id. Pursuant to the AOPA, we will reverse the administrative decision only if it is: (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to a constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; or (5) unsupported by substantial evidence. I.C. § 4-21.5-5-14. Although an appellate court grants deference to an administrative agency's findings of fact, no such deference is accorded to its conclusions of law. Musgrave, 964 N.E.2d at 899-900 (citing LTV Steel Co. v. Griffin, 730 N.E.2d 1251, 1257 (Ind. 2000)). The burden of demonstrating the invalidity of the agency action is on the party who asserts the invalidity. Id. at 900.

9

The Board's order at issue here was entered on cross motions for summary judgment. "In an administrative proceeding, a party may, at any time after the matter has been assigned to an administrative law judge, move for a summary judgment in the party's favor as to all or any part of the issues in the proceeding." Id. (citing I.C. § 4-21.5-3-23). "When a party files a summary judgment motion, the administrative law judge considers the motion as a court would if considering a motion for summary judgment filed under Trial Rule 56." Id. Pursuant to Indiana Trial Rule 56(C), summary judgment is appropriate when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. "'A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed facts are capable of supporting conflicting inferences on such an issue.'" Id. (quoting Mahan v. American Standard Ins. Co., 862 N.E.2d 669, 675 (Ind. Ct. App. 2007), trans. denied). The party moving for summary judgment bears the burden of making a prima facie showing that there is no genuine issue of material fact and that he or she is entitled to a judgment as a matter of law. Id. Once the moving party meets these two requirements, the burden shifts to the non-moving party to show the existence of a genuine issue of material fact by setting forth specifically designated facts. Id. The fact that the parties made cross-motions for summary judgment does not alter our standard of review. Id. Instead, we consider each motion separately to determine whether the moving party is entitled to judgment as a matter of law. Id.

### I. Applicability of the Handbook and Its General Terms and Conditions

10

We first address the Parkers' argument that the Handbook's General Terms and Conditions, which include the statement that the drug testing results are final and binding, were void because the Board did not follow the AOPA rule-making procedures in creating the General Terms and Conditions. According to the Parkers, the Board acted in excess of its statutory jurisdiction and authority.

The Parkers did not raise this argument in their motion for summary judgment. In their response to the Board's motion for summary judgment, the Parkers briefly mentioned the "rulemaking provision" of the AOPA, but they never argued that the General Terms and Conditions were void or that the Board acted in excess of its statutory authority. Appellee's App. p. 61. In their objections to the ALJ Panel's Recommended Order, the Parkers again mentioned that the General Terms and Conditions were not adopted in accordance with the AOPA, but they did not argue that the General Terms and Conditions were void. See id. at 160-61. The Parkers first argued that the General Terms and Conditions were void in their brief in support of their petition for judicial review. See Appellants' App. pp. 89-92. "A party may only obtain judicial review of an issue that was raised before the administrative agency and preserved for review[.]"[2] Dev. Servs. Alternatives, Inc. v. Indiana Family & Soc. Servs. Admin., 915 N.E.2d 169, 178 (Ind. Ct. App. 2009), trans. denied; see also I.C. § 4-21.5-5-10 (limiting judicial review of issues not raised before the agency). We conclude that the Parkers waived this issue by

---

[2] A person may obtain judicial review of an issue not raised before the agency if: (1) "the issue concerns whether a person who was required to be notified by this article of the commencement of a proceeding was notified in substantial compliance with this article" or (2) "the interests of justice would be served by judicial resolution of an issue arising from a change in controlling law occurring after the agency action." I.C. § 4-21.5-5-10. Neither of these exceptions is applicable here.

11

failing to raise it before the Board. Consequently, for purposes of this appeal, we apply the General Terms and Conditions.

## II. Ex Parte Communications

The Parkers argue that the administrative proceedings were improper because of communications between Dr. Hibberd and the Board during the Board's deliberations. At the beginning of the hearing before the full Board, Dr. Hibberd recused himself. The Board president noted that Dr. Hibberd would not participate or vote on the matter but would be allowed to hear the arguments. After arguments by counsel, the Board discussed the matter. At that time Dr. Hibberd made comments regarding the testing procedures. The Parkers' counsel objected to Dr. Hibberd giving testimony, but Dr. Hibberd continued with his comments.

The Parkers first argue that Dr. Hibberd's comments were improper ex parte communications. The reliance on ex parte communications is not allowed in administrative hearings of an adjudicatory nature. Worman Enterprises, Inc. v. Boone Cnty. Solid Waste Mgmt. Dist., 805 N.E.2d 369, 375 (Ind. 2004). "Black's Law Dictionary defines ex parte communications as 'a generally prohibited communication between counsel and the court when opposing counsel is not present.'" Id. at 374-75 (quoting BLACK'S LAW DICTIONARY 597 (7th ed. 1999)). "[E]x parte communications most often become an issue if a judge communicates outside the courtroom without disclosing those communications to everyone involved." Id. at 375. The communications at issue here were made during the Board's deliberations and in front of the parties and their counsel. Thus, the communications were not ex parte.

The Parkers also argue that the communications violated Indiana Code Section 4-21.5-3-13(a), which provides: "An individual who has served as investigator, prosecutor, or advocate in a proceeding or in its preadjudicative stage may not serve as an administrative law judge or assist or advise the administrative law judge in the same proceeding." The Board concedes that Dr. Hibberd "certainly should have been advised not to make any comments to the State Fair Board . . . ." Board's Br. p. 24. However, the Board argues that Indiana Code Section 4-21.5-3-13(a) is inapplicable because Dr. Hibberd was not advising the administrative law judge; rather, he was advising the full Board.

We need not determine whether Indiana Code Section 4-21.5-3-13(a) is applicable here because we conclude that any error in Dr. Hibberd's comments was harmless. "[T]he harmless error doctrine applies to the judicial review of administrative hearings." Indiana State Bd. of Embalmers & Funeral Directors v. Kaufman, 463 N.E.2d 513, 520 (Ind. Ct. App. 1984). "An appellant has the burden of showing reversible error." Id. During the Board's deliberations, Dr. Hibberd discussed that Purdue had performed a retinal test on Jordan's animal that was positive for Zilpaterol and an independent test was performed on the other retina in Texas. Dr. Hibberd noted that they had followed the drug testing policy, that they tested the champion and reserve champion animals and did random testing in the barn, and that the only positive test results were in winning animals. Dr. Hibberd also noted that the amount of retinal material available was limited, so they sent the remainder to an outside lab for verification.

13

The drug testing policy and procedures in general and specific to Jordan's animal had already been extensively briefed in the summary judgment proceedings. Thus, the Board already had evidence regarding the drug tests. The Parkers have not demonstrated how they were harmed by Dr. Hibberd's comments. Although Dr. Hibberd's comments were improper because he had recused himself from the Board's deliberations and the Board was incorrect in allowing him to speak, we conclude that the error was harmless.

### III. Due Process Rights

The crux of the Parkers' argument is that Jordan was denied his due process rights. The Due Process Clause of the Fourteenth Amendment declares that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Due process contains both substantive and procedural elements.

Procedural due process requires a two-part inquiry: "'The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty. Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process.'" Perdue v. Gargano, 964 N.E.2d 825, 832 (Ind. 2012) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59, 119 S. Ct. 977, 989 (1999)). "[T]he fundamental requirement of procedural due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Id. When a deprivation is contemplated, "these principles require . . . an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." Id. (footnote omitted). "When protected property

14

interests are implicated, the right to some kind of prior hearing is paramount." Charnas v. Estate of Loizos, 822 N.E.2d 181, 185 (Ind. Ct. App. 2005).

"'Substantive due process ensures that state action is not arbitrary or capricious regardless of the procedures used.'" Honeycutt v. Ong, 806 N.E.2d 52, 58 (Ind. Ct. App. 2004) (quoting N.B. v. Sybinski, 724 N.E.2d 1103, 1112 (Ind. Ct. App. 2000), trans. denied). "To set forth a claim for violation of substantive due process, a party must show (1) that the law infringes upon a fundamental right or liberties deeply rooted in our nation's history; or (2) that the law does not bear a substantial relation to permissible state objectives." Id. "To succeed, the party must demonstrate that the State's conduct is arbitrary and capricious." Id. "The State will prevail if any rational basis for its action can be hypothesized." Id.

According to the Parkers, they had a constitutionally protected property right under the Due Process Clause, the drug test results were inadmissible because the Parkers were unable to perform independent testing, which they argue was required under the Due Process Clause, they did not waive their due process rights by agreeing to the General Terms and Conditions, the "final and binding" drug test provision is unconstitutional as a "zero tolerance" policy, and they were improperly denied an evidentiary hearing.

### A. Waiver

Even if we assume, for purposes of this appeal, that the Parkers had a constitutionally protected property right here, we conclude that they waived their alleged constitutional rights. "It is without question that an individual may waive his or her

15

procedural due process rights." Domka v. Portage Cnty., Wis., 523 F.3d 776, 781 (7th Cir. 2008) (citing D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185, 92 S. Ct. 775 (1972)). "A constitutional waiver is considered to be valid if it is knowing and voluntary." Id.

The Board concluded, in part:

> [Jordan's] and his parent's signatures on the enrollment form and 4-H Animal Affidavit bound them to the General Terms and Conditions, including but not limited to the "final and binding" nature of the results of the drug testing conducted on the Lamb even if [Jordan], his parents, and/or guardians did not administer Zilpaterol to the Lamb.

Appellants' App. p. 44. The Parkers argue that they did not knowingly and voluntarily agree to waive their right to challenge the results of the drug test. When they entered the lamb at the State Fair, Jordan and Cheryl signed the "4-H Animal Affidavit," which provided: "My submission of a 4-H entry expressly binds me to all terms and conditions contained in any and all parts of the Indiana State Fair 4-H/FFA Handbook/Premium List, to include, but not limited to, consent to drug, steroid, tissue tests, examination of my animal's carcass . . . as a condition of entering the Indiana State Fair." Id. at 277. The Handbook's General Terms and Conditions prohibited the animals from having drugs, steroids, or chemicals at greater than federally established standards. The General Terms and Conditions also provided: "The test results from the testing laboratories are final and binding upon the exhibitor, the exhibitor's parents and/or legal guardian even if the exhibitor, or the parents and/or guardians did not administer the drug or foreign substance to the exhibitor's animal. . . ." Id. at 172.

16

The Parkers argue that they did not knowingly or voluntarily consent to the "final and binding" nature of the drug test results because they did not separately sign the Handbook or its General Terms and Conditions. However, Cheryl admitted that she agreed to be bound by the terms of the 4-H Affidavit, that she consented to the drug testing, and that she agreed to be bound by the Handbook. Id. at 399-400. Although he did not sign the 4-H Affidavit, James was aware of the drug testing policy and had read the Handbook's General Terms and Conditions. Id. at 404-10. Further, Jordan agreed that he had consented to the drug testing and the terms of the Handbook. Id. at 352-56. We conclude that the Parkers knowingly and voluntarily agreed to be bound by the Handbook and its General Terms and Conditions.

They also argue that the language of the General Terms and Conditions is ambiguous. An agreement "is ambiguous only if reasonable people reading the contract would differ as to the meaning of the terms." Dreibelbiss Title Co., Inc. v. Fifth Third Bank, 806 N.E.2d 345, 349 (Ind. Ct. App. 2004), trans. denied. Our review of the 4-H Affidavit, Handbook, and General Terms and Conditions does not reveal any language that would result in reasonable people reaching differing conclusions as to the meaning. We conclude that the 4-H Affidavit, which Jordan and Cheryl signed, clearly and unambiguously bound them to the terms of the Handbook. Further, we conclude that the Handbook's General Terms and Conditions clearly and unambiguously provided and emphasized that the test results were final and binding.

17

Finally, the Parkers also argue that Jordan, a minor, could not waive his constitutional due process rights under these circumstances. In support of their argument, the Parkers cite Indiana Code Section 31-32-5-1, which provides:

> Any rights guaranteed to a child under the Constitution of the United States, the Constitution of the State of Indiana, or any other law may be waived only:
>
> (1) by counsel retained or appointed to represent the child if the child knowingly and voluntarily joins with the waiver;
>
> (2) by the child's custodial parent, guardian, custodian, or guardian ad litem if:
>
> (A) that person knowingly and voluntarily waives the right;
>
> (B) that person has no interest adverse to the child;
>
> (C) meaningful consultation has occurred between that person and the child; and
>
> (D) the child knowingly and voluntarily joins with the waiver; or
>
> (3) by the child, without the presence of a custodial parent, guardian, or guardian ad litem, if:
>
> (A) the child knowingly and voluntarily consents to the waiver; and
>
> (B) the child has been emancipated under IC 31-34-20-6 or IC 31-37-19-27, by virtue of having married, or in accordance with the laws of another state or jurisdiction.

However, this statute pertains to juvenile delinquency proceedings, and the Parkers cite no authority for the proposition that the statute applies to juvenile waivers in a civil context. Moreover, Cheryl, as Jordan's parent, also signed the 4-H Affidavit, which

18

referred to the General Terms and Conditions, and the Parkers make no argument that she was unable to bind Jordan to the agreement and General Terms and Conditions.[3]

## B. Zero Tolerance Policy

The Parkers argue that the "final and binding" provision regarding the drug test results is an unconstitutional "zero tolerance policy." Appellants' Br. p. 24. However, the only authority cited by the Parkers is a Texas Court of Appeals memorandum opinion, Hinterlong v. Arlington Independent School Dist., No. 2-09-050-CV, 2010 WL 522641 (Tex. Ct. App. 2010). In Hinterlong, a student was found with a small amount of alcohol in his vehicle on school property and was placed in an alternative school based on the school's zero tolerance policy. The court noted:

> School districts' zero tolerance policies, as a whole, have promoted consistency over rationality. See generally Christopher D. Pelliccioni, Note, Is Intent Required? Zero Tolerance, Scienter, and the Substantive Due Process Rights of Students, 53 Case W. Res. L.Rev. 977, 990-91 (2003). Arguments can be made that appeals, processes, and procedures provided to a student after application of a zero tolerance policy are worthless because each appeal, process, or procedure simply affirms zero tolerance; that is, such procedural due process is meaningless because no one within the process can circumvent the policy. Moreover, strict adherence to zero tolerance policies without consideration of the student's mens rea would appear to run afoul of substantive due process notions. See Seal v. Morgan, 229 F.3d 567, 578 (6th Cir. 2000) (stating that "the Board's Zero Tolerance Policy would surely be irrational if it subjects to punishment students who did not knowingly or consciously possess a weapon").

---

[3] Because the Parkers' waived their due process claim related to the "final and binding" provision of the Handbook, we need not address their inability to obtain an independent drug test or whether they had a constitutionally protected property interest.

19

Hinterlong, No. 2-09-050-CV, 2010 WL 522641 *2.  However, the court concluded that the student had an opportunity for the school to consider his mens rea and avoid application of the zero tolerance policy.  Although the student had this opportunity, the student presented no evidence to escape application of the zero tolerance policy, and his "applied due process challenge" failed.  Id.

The Parkers appear to be making both a substantive and procedural due process argument here.  However, as in Hinterlong, although the Handbook contains a provision that the drug test results are "final and binding," participants are given the opportunity to submit evidence in their defense.  Appellants' App. p. 172.  This is evident when A.M.'s situation is considered.

A.M. was another 2011 State Fair participant and also had a positive drug test result for his animal.  A.M. was initially given the same sanctions as those received by Jordan.  During an evidentiary hearing before an ALJ panel, A.M. presented mitigating evidence from a feed supplier that his "animal's feed was accidentally contaminated with residue from feed containing Zilpaterol."  Appellants' App. p. 236.  A.M. did not challenge the results of the drug testing.  The ALJ panel used its discretion to set aside A.M.'s two-year ban from the Swine Department, his permanent ban from participation in any 4-H sales at the State Fair, and his lifetime ban for further infractions.  However, A.M. was still "disqualified and forfeit[ed] all entry and other fees and all premiums, trophies and awards from the Swine Department including sale proceeds from the Sale of Champions or regular marketing channels for the 2011 Indiana State Fair."  Id.  The forfeiture of the sale proceeds is reasonably related to a legitimate state interest of

20

preventing contaminated animals from entering the food supply. The Parkers have failed to demonstrate that the "final and binding" policy results in a due process violation.

### C. Evidentiary Hearing

The Parkers argue that Jordan was improperly denied his due process rights because he did not receive an evidentiary hearing. Indiana Code Section 4-21.5-3-25(c) provides: "To the extent necessary for full disclosure of all relevant facts and issues, the administrative law judge shall afford to all parties the opportunity to respond, present evidence and argument, conduct cross-examination, and submit rebuttal evidence, except as restricted by a limitation under subsection (d) or by the prehearing order." According to the Parkers, Jordan was denied an opportunity to present a meaningful defense and to test the validity of the charges by the failure to have an evidentiary hearing.

The Board points out that the Parkers moved for summary judgment and that the Board responded with a cross motion for summary judgment. Indiana Code Section 4-21.5-3-23 allows summary judgment in administrative proceedings. It provides in part:

> (a) A party may, at any time after a matter is assigned to an administrative law judge, move for a summary judgment in the party's favor as to all or any part of the issues in a proceeding.
>
> (b) Except as otherwise provided in this section, an administrative law judge shall consider a motion filed under subsection (a) as would a court that is considering a motion for summary judgment filed under Trial Rule 56 of the Indiana Rules of Trial Procedure.

I.C. § 4-21.5-3-23.

21

The Parkers' motion for summary judgment only concerned the admissibility of the drug test results. Although not labeled as such, the Parkers' motion was clearly a motion for partial summary judgment only. The Board's cross motion for summary judgment also concerned the admissibility of the drug test results, the Parkers' agreement to abide by the Handbook, and the "final and binding" nature of the drug test results. As with the Parkers' motion, although not labeled as such, the Board's motion was a motion for partial summary judgment. The Parkers' response to the Board's cross motion argued, in part, that the penalties imposed were excessive under the Indiana Constitution.

Despite the limited issues presented in the briefs, the ALJ Panel treated the Board's motion as a motion for summary judgment on all the issues. The ALJ Panel denied the Parkers' motion for summary judgment, granted the Board's motion for summary judgment, and adopted the September 2011 decision, including the penalties. The ALJ Panel's recommended order did not address the Parkers' argument regarding the penalties. The full Board then adopted the ALJ Panel's recommended order.

The Parkers compare their situation to that of A.M., who had an evidentiary hearing and presented evidence that his animal's feed was accidentally contaminated. The ALJ panel used its discretion to reduce the penalty imposed on A.M. as a result of the positive drug test. The Parkers were denied an opportunity to present such evidence. Neither party moved for summary judgment regarding the penalties; rather, the focus of the motions was the admissibility of the drug test results. In fact, in a reply brief during the summary judgment proceedings, the Board noted that Jordan still has "the same opportunity as A.M. to present evidence at a hearing before another ALJ panel" and that

22

"once briefing is completed" Jordan still had the opportunity for a hearing at which he could present evidence. Appellee's App. pp. 91, 95. However, the ALJ Panel's order adopted the prior decision on the penalties against Jordan, and the full Board similarly adopted the ALJ Panel's decision. We conclude that the Board improperly granted full summary judgment here.

We remand for the Board to conduct an evidentiary hearing regarding the penalties imposed on Jordan. We note that, even in this appeal, the Parkers' main focus remains challenging the admissibility of the drug test results. However, we conclude that issue was properly resolved in summary judgment proceedings. Consequently, on remand, the Parkers may not challenge the admissibility of the drug test results or the policy that the drug test results are "final and binding." Because of our remand for an evidentiary hearing regarding the penalty imposed by the ALJ Panel, we need not address the Parkers' equal protection and excessive penalty arguments.

## Conclusion

The Parkers waived their argument that the Handbook's General Terms and Conditions are void. Further, they agreed to be bound by the Handbook, including its requirement that the drug testing was "final and binding." We also conclude that any error in Dr. Hibberd's comments during the Board's deliberations was harmless error. However, because the summary judgment motions addressed only the admissibility of the drug test results, we conclude that Jordan was entitled to an evidentiary hearing regarding the penalties imposed on him. We affirm in part, reverse in part, and remand for further proceedings.

23

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and BAILEY, J., concur.